A tutor’s liability is not prevented by his neglecting to take the oath, give security &c.
The petition stated that, at the time of the death of the plaintiffs’ mother, they were minors and one Joseph Fouque took upon himself to act as their tutor and curator ad bona not only assisted as such at the inventory of her estate, but took possession of the plaintiffs’ estate, to the amount of $5000, which he received from the testamentary executor ; that he never rendered any account, but afterwards failed, and the syndics of his creditors have paid the plaintiffs a part of the said sum, which they leaves a balance of $3584 38 due them, for which they have judgment against the said Fouque ; that they have a legal mortgage therefor, from the 7th of December, 1810, when he made the first act of administration of the plaintiffs’ property ; that at that time, he was possessed of twelve slaves, which he afterwards sold to the defendant, by an act under private signature, hearing date June 22d, 1811, which was not recorded till the 9th of July, 1812, wherefore, they prayed, that the said slaves, now in the possession of the defendant, may be seized and sold, to satisfy their claim.
The answer denied that Fouque ever acted as tutor or curator ad bona, as stated in the pe *443 tition. It averred that he borrowed from Vellio, executor of the plaintiffs’ mother, 5000 dollars, on a mortgage of a house, which the executor released on receiving other security, on the 3d of June, 1812. It suggested that the negroes mentioned in the petition were never affected by any tacit mortgage, that no such mortgage was ever recorded. The defendant further pleaded a judgment in his favor against Fouque’s syndics.
Briere deposed, that from the records of the court of probates it does not appear that Fouque ever presented himself to be confirmed as tutor, or curator of the plaintiffs, or had letters therefor.
The signature of Fouque, at the foot of the inventory, was admitted.
In an act passed before a notary, Fouque declared that, as tutor and curator of the plaintiffs, he was indebted to Vellio, executor of their mother, in the sum of 5000 dollars, which he had borrowed from the executor, and had bound himself to pay, in about nine months, and mortgaged sundry slaves therefor.
The district court gave judgment for the defendant. It observed, that “ the executor is charged with the administration of the estate, and is responsible for its misapplication. It is his duty to make an inventory, and if necessary, to sell the property, and he is accountable for every thing that comes to his hands. The duties of a tutor are principally confined to the person of the minor. A loan by the executor, of the monies of the estate, gives no lien on the estate of the borrower : and there is no difference in the principle, whether the loan be made to a person, styling himself tutor, or any other individual. That this loan to Fouque must have been made for his individual benefit, appears from facts and law. It is evident, from the fact of his obliging himself to return the money, which would not have been the case, if it had been intended for the use and benefit of *445 the minors. It is evident from the law, because the tutor cannot borrow for the minor, nor enter into any transaction or compromise, without the authority of the judge. Civil Code, 70, art. 65. Nor could he lay it out, in the purchase of any property for the minor, Id. art. 72. In this case, it is considered, that the loan, made to Fouque, was for his personal use and benefit, and not for that of the minors, and gives no lien on his property. For it, he is responsible to the executor of the latter, who is charged with the administration of it, is alone accountable to the heirs.” The plaintiffs appealed.
*446 Vellio took out letters testamentary, and acted as executor up to the 2d of July, 1812, and afterwards.
Neither Fouque nor Vellio did ever take out letters of tutorship or curatorship, nor cause their appointment to be confirmed ; nor caused any other tutor, or curator, ad bona, to be appointed.
Vellio made, on the 7th of December, 1810, as executor, an inventory of the estate, amounting to 6600 dollars, the greater part of which was cash.
This inventory was made with the intervention of Fouque, who assisted thereat as tutor and curator ad bona. It was made under private signature without the intervention of any person but two appraisers. On the 15th the inventory was filed in the office of the register.
It is in evidence, that on the 7th of December, 1810, Fouque possessed a house, sold to Harang in June, 1812, by a notarial deed, and twelve slaves, sold to the defendant, by a deed, under private signature, bearing date, June 22d, 1811, and which was afterwards, recorded on the 11th of July, 1812.
They rest their claim on the following grounds :
1. Fouque having acted as their tutor and curator, without having been legally authorised as such, and having intermeddled (s’etant immiscé) with the administration of their property, they have a legal mortgage on his property, from the day he made the first act of that ad *449 ministration. Civil Code, 457, art. 20 and 28. 71, art. 75 ; 75, art. 82 ; 455, art. 15.—ff. 27, 3, 25, eod. lib. 5, 1 § 1.—Cod. 5, 45, 1 & 2, Domat, tom. I, fol. 182, no. 45.—Pothier, traité de l’hypoth. chap. 1, art. 3.—Partida 5, 13, 23.—Febrero, Adicion. 2, 3, 3, § 11, no. 51 & 53.
2. This legal mortgage lies, not only for all the monies belonging to his wards, which have come to his hands, but also for the interest thereon, at the rate of five per cent. per annum, from the time he has received such sums respectively. Civil Code, 71, art. 71.—ff. 27, 5, l, 1, § 8.
3. The tacit mortgage, lies on the property of Fouque, because he has received and wasted the monies of his wards ; it does likewise lie for his responsibility, if, without having ever received any part of the monies, he has, by his neglect or contrivance, suffered them either to remain unsecured in the hands of the executor, after the time of his executorship had expired, or to be then lent out, by the executor, to any body else who should afterwards have failed ; because it was his duty, at the expiration of a year, to wit : in December, 1811, to compel the executor to render his account. It was likewise his duty to take care that the balance belonging to the minors should be safely collocated ; and by faili *450 ng to perform that duty he became liable for the subsequent insolvency of the executor, as well as for that of the borrower. Civil Code, 69, art. 52 ; 71, art. 75. ff 27, 3, 1, ; eod. lib. 5, § 9, l. 4 ; 26, 7, 15. Domat, 1, 179, no. 23. Ferriére, Dict. de Pratique, 2, 731, verbo tuteur, 3 Ancien Denisurt, 297, verbo tuteur, nos. 69 and 61.
It is to be observed that the defendant does not deny any of the facts alleged in the petition ; but confines himself to the following points : 1 That Fouque never acted as tutor or curator ad bona. 2. That he borrowed 5000 dollars from Vellio, the executor of their mother, and gave a mortgage on a house and lot, which was afterwards released by Vellio on receiving other security. 3. That the slaves purchased from Fouque by the defendant, never were subject to mortgage. 4. That a judgment has been rendered in his favor in relation to the property in the said slaves between him and the sindycs of Fouque, and is, therefore, res judicata against the plaintiffs. 5. That their legal mortgage not having ever been recorded, can have no effect against him.
I. The first point fails on the mere inspection of the two documents in evidence, viz. the in *451 ventory and the deed passed before the notary on the 2d of July, 1812 ; in both of which he assumed the character of, and acted as tutor and curator.
To this the counsel for the defendant objects that the assistance of Fouque, at the inventory, was not an administrative, but merely a conservatory act, and that thereby no tacit mortgage accrued.
It is certain, however, that without the intervention of a tutor, no inventory could have been made ; that this was the only act the tutor had to perform at that period, and that, had he been legally appointed, his administration would have begun by that act, and stopped there till the expiration of the year of the executorship.
Now the tutor could not assist at the inventory unless duly appointed by the judge ; and it is from the very day of that appointment that the tacit mortgage attaches, Civil Code, 71, art. 75. We have already shown from the authorities above cited, and chiefly from Pothier, that intruders are not entitled to greater favor than legal administrators.
II. It does not appear at what period the money was borrowed ; whether during the year of the executorship, or after its expiration ; but *452 I beg leave to observe that the question as to the first point being once settled, it follows that Fouque, tutor of the minors, borrowing their money from their deceased mother’s executor, whom it was his duty to controul, and afterwards receiving from him, at a period when his executorship had certainly expired, a release of the mortgage that was to secure that loan ; it follows that, in such circumstances, Fouque cannot but be suspected of having intended, either with or without connivance on the part of the executor, to defraud his wards of that money, which constituted their inheritance, and with the preservation of which he was entrusted. Is it not to guard against such fraudulent practices that the law has secured to minors that legal and tacit mortgage, which lies on the property of the perpetrator of such acts, and affords to his victims a relief against such a flagrant abuse of his legal or assumed character ?
*453 III. The statement of the case, together with the authorities cited in support of the first ground, is sufficient is defeat the third objection.
IV. The defendant states that the judgment alluded to, is in relation to the property in the slaves, and this is an hypothecary action upon the same slaves ; thus the two actions are distinct and of a different nature. Besides, the plaintiffs were not parties to the suit alluded to, nor were the syndics of Fouque anywise qualified to represent them ; thus this is moreover, as to the plaintiffs res inter alias acta. Therefore, there is no occasion to plead on this head the res judicata in bar of this action. The court will be convinced of the correctness of these observations, by the inspection of the suit, the record of which, is admitted as evidence.
V. The fifth ground of defence will be answered by our Civil Code, 455, art. 15, 457, art. 27 and 28 ; and by the act of March 26, 1813, directing tacit mortgages to be recorded ; and by the 3d section whereof, the tacit mortgages in favor of minors, are expressly dispensed from the formality of the recording.
*454 Were it admissible for the plaintiffs to leave the strong ground they have taken, for one far weaker, it would be intimated that even then this fifth point, would not in fact prevail. For the deed by which Fouque, acting as tutor and curator, acknowledges to have received 5000 dollars, belonging to the minors, was executed before a notary, and recorded on the 2d of July, 1812, and it was only nine days afterwards, on the 11th of the same month, that the deed of sale of the slaves from Fouque to the defendant was recorded. But, it is contended, that the legal mortgage of the plaintiffs existed against any one claiming under Fouque, as well as against Fouque himself, without the formality of the record.
The preceding observation as to the day, on which Fouque received the money of his wards, would also apply, if necessary, to the objection made by the defendant’s counsel in support of his first point, to wit : that assisting at the inventory was not an administrative act ; for, receiving their money was certainly such an act in the meaning of the law. And should even the legal mortgage lie only from that date, it would yet be nine days anterior to the title of the defendant, as it has been just now demonstrated.
*455 But, it is said, this deed of the 2d July, 1812, is but a loan of money from the executor to Fouque. It is true, that the borrower appeared as the tutor and curator of the minors, and acknowledged that the monies were theirs, but in the first place, in assuming that character, he styles himself tutor and curator of the minor and major children, &c. which latter part destroys the idea of a tutor or curatorship ; and in the second place, the responsibility rested entirely on the executor, who was answerable for the misapplication of the estate. The judge a quo held that the duties of a tutor are principally confined to the person of the minors. A loan by the executor gives no lien upon the estate of the borrower, and there is no difference in the principle, whether the loan be made to a person styling himself tutor, or to any other individual. Then he goes on to show that it is evident both from fact and law, that this loan to Fouque was made for his personal use and benefit, and not for the use and benefit of the minors, and gives no lien upon his property ; that for this sum he is responsible to the executor and that the executor, who was charged with the administration of it, is alone accountable to the heirs.
In addition to this reasoning of the judge, *456 the counsel for the defendant contends that Vellio having been designated together with Fouque, as tutor, by the mother of the plaintiffs and having appeared as such at the meeting of Fouque’s creditors, it is to him and not to Fouque, that they must look for their money, as he alone is responsible for it in either capacity ; for he alone has administered it and disposed of it.
I shall now proceed to shew, how groundless are those reasons alleged, by the defendant’s counsel ; and that the judge erred in his decision on the question, that there is no lieu upon the estate of the tutor.
I am first, to dispose of the objection as to the two-fold capacity of executor and tutor in Vellio. It is true, that he was designated for both by the will ; but from the evidence in the cause, it appears that from the outset, he had made his election, by taking out testamentary letters, and by acting in the sole capacity of executor. It will be observed, that in this instance, the duty of an executor, was incompatible with that of the tutor ; because the executor being accountable to the heirs, and the tutor representing the heirs, it was the duty of the latter to controul the former ; thus it was only after the executor’s administration was at an end, *457 and his account settled, that he could have been appointed tutor to the minors. In fact, we find in the proceedings of Fouque against his creditors, which are in evidence in this case, that Vellio, for the first and only time, styles himself tutor, after Fouque’s failure, and at the meeting of his creditors in 1813, and that he there claims the $5000; as being due to him in the capacity of tutor. Now, if this act of Vellio, subjects him to a legal mortgage, it would lie only from that date, (1813) when there was nothing left to the minors, Fouque having got the whole of the estate, and when, therefore, there was nothing left for the tutor to administer.
Reverting to the other arguments of the counsel for the defendant, and to the reasoning of the judge, we observe, that the irregularities of the words, tutor and curator of the minor and major children, & c. which are to be found in the notarial deed, cannot prejudice the plaintiffs, who were not parties to it, and who are not to suffer for the connivance of the parties, or the ignorance of the notary. But the nature of the thing shews by itself, that by the word minor, the notary meant the minors, under the age of puberty, and by the word major, those above that age. The facts in the cause, which are not *458 denied by the defendant, shew that the plaintiffs were then all minors.
I demonstrate by the deed, that Fouque was still acting as their tutor and curator, and that he received their money. This is all I ought to prove, to make him liable to repay. It cannot be said, that he was in the same position, as another borrower ; for it was a duty incumbent upon him, to oppose the loan, and to compel the executor to settle his account, and to pay the money of the minors, that it might be safely disposed of, for their own benefit. I have shewn, that it was his duty to do so, and that he would be still liable, even had he not been himself the borrower. With how much more reason, then, shall he be held, when neglecting, misusing the sacred trust, which a dying friend had entrusted him ? When instead of protecting his wards, we find him deceiving their mother’s executor, conniving with him, and using every fraudulent practice, to despoil them of the little fortune, laid up for them, by the labour and industry of their parents !
I do not contest what the judge has said, that a loan, made by an executor, gives no lien upon the estate of the borrower. But he travels out of the question, when he says, that there is no difference in the principle, whether the loan be *459 to a person, styling himself tutor, or to any other individual. To have drawn such a conclusion, he must have overlooked the grounds taken by the plaintiffs, and even totally disregarded their third and last ground, together with the authorities quoted in support of it. The duties of a tutor, says he, are principally confined to the person of the minor ; but, that does not lessen his duties as to the conservation of the property. And he forgets that Fouque was also curator, and that the duties of a curator are principally confined to the property of the minor. Nay, as to the preservation of that property, the duties are the same.
An appeal to law and fact seems quite unnecessary to prove that, on which we all agree, viz : that it was for his personal use and benefit, and not the use and benefit of the minors, that Fouque borrowed their money. But, we are at a loss to make out upon what principle is founded the conclusion drawn by the judge; that therefore, this loan gives no lien upon the property of Fouque. He was their tutor ; he ought to have received and safely collocated that money on their account. Is he less liable for having diverted it to his own use? Has he not in fact received and pocketed or wasted the money ? To maintain, by such reasoning, that *460 Fouque is only responsibile to the executor for this sum that the executor was exclusively charged with the administration of it, and is, therefore, alone accountable to the heirs, is exactly granting to Fouque what, from the beginning, he intended to procure, by his fraudulent practices, viz. to avoid any lien on his property, and thus to deprive the plaintiffs of any effectual relief and confine them to a nugatory one.
When the judge positively asserts that the executor was exclusively charged with the administration of the money, he forgets that at that period (2d July, 1812) the legal period of executorship had expired for six months and upwards, and that it was the duty of the tutor and curator not to allow him any further administration, but to have the estate settled, and the balance paid and safely collocated.
It is not contested that the plaintiff's, as heirs to their mother, have at all events, an action against Vellio. as her executor ; but, that action gives them no lien upon his property, *461 even if he had any. As minors, they have a lien on the property of Fouque, their tutor and curator. It follows, that they have both remedies, and thus the election is theirs. In this position shall they be forced to abandon their first, direct and effectual remedy, in order to look to a secondary, circuitous and delusory one ?
I have a single observation to make on the bill of exceptions, on the refusal to admit the testimony of Fouque.
Joseph Fouque and Vellio are appointed tutors of the minors Bernard, by their mother’s will. Neither of them take out letters of tentorship, or take the oath and give the security required by law. Vellio is, also, named executor and detainer of the property by the same will.
Fouque, however, signs the inventory and in the caption of it he is called tutor ; but he never received any part of the estate (otherwise than by the loan hereafter mentioned) nor did he intermeddle with the administration of the property, the whole remaining in the hands of Vellio, the executor and also named tutor by the will. On the 2d day of July, 1811, Fouque borrowed $5000, part of the estate of the minors for which he gave his promissory note secured by an obligation before a notary, &c. a mortgage of several slaves for the payment to Vellio, in this instrument he is called tutor of the minor and major children of Mrs. Bernard. In January, 1813, Fouque becomes insolvent, Vellio appears as a creditor for the 5000 dollars, and swears to *463 the debt as tutor of the plaintiff’s, and as such receives a dividend. For the deficiency of this, suit is brought against Vignaud, who, on the 22d of June, 1811, purchased 12 slaves from Fouque, under the supposition that, Fouque being the tutor, his estate is mortgaged for the amount of the plaintiff’s claim, that this mortgage accrued from the time Fouque first signed the inventory, or at least from the time he received the money, the 2d July, 1813, which was 7 days before Fouque’s deed, to Vignaud was recorded.
First, it is stated that the tacit mortgage took place from the time that Fouque signed the inventory as tutor. The law gives this mortgage on the estate of the tutor from the day of his appointment. On the estate of those who, without being tutors, take upon themselves the administration of the minor’s property from the day when they made the first act of that administration. Civil Code, 456, art. 19, 20.
Now Fouque was never tutor, he had been named in the will, but he had done none of the requisites to complete his appointment. He had taken no oath, given no security, obtained no confirmation from the judge, procured no under tutor to be appointed : all this is required by the code. He was not, therefore, a tutor, and therefore there can be no mortgage attached to his *464 property as such. Nor can he be liable to any of the consequences to which a tutor would he liable, as such. Has he taken upon himself the administration of the minors, property ?
Fouque, therefore, was neither tutor, nor has he administered as tutor : therefore, there is no mortgage accruing to the plaintiffs, on his property.
A number of authorities are quoted to prove that Fouque was liable for neglect, in not calling on Vellio to account, after the year of his executorship expired : to this there are two answers, one of which has been anticipated. Fouque was never the tutor. The other is that, supposing him to be a tutor, Vellio was equally so, and he, Fouque, had no right to call him to account.
Another objection to the plaintiffs’ recovery is, that they have not described the property specially mortgaged by Fouque. It is true, that they say (and perhaps, it may be so stated, on the tableau of distribution of Fouque’s estate) that some of the negroes were dead, and others were previously mortgaged by Fouque. Yet, these facts ought to have been proved to the satisfaction of the court, more especially, as the existence of the prior mortgage, on the slaves is inconsistent with the certificate *467 which the register of mortgages must have given, when the negroes were specially mortgaged by Fouque to Vellio. I pray the court to examine the tableau of distribution with a view to this point.
It appears, also, by the "notarial act made by Fouque to Vellio, that this and the mortgage it contained was only a collateral security for the payment of a negociable promissory note, which is not produced. Fouque, and still less an innocent purchaser under him, cannot be adjudged to pay so large a sum, without the production of the security that was given for it ; besides, this note was indorsed, the indorser, therefore, is liable and ought to have been called on before the innocent purchaser, or, at any rate, that purchaser, if he be obliged to pay, ought to have the benefit of a subrogation to all the rights of the contracting party. Now, one of these rights would have been that of suing the indorser, as well as the drawer of the note; but how can he have this, unless the note be produced ?
I pray the court to remark, during the whole of this discussion, that the plaintiffs consider Fouque as incurring the responsibility of a tutor because he acted as such; but the law has no such provision. A man may do an hundred acts, that none but a guardian could properly do, *468 and yet not subject himself to the responsibility of one, or impose a tacit mortgage on all his property. It is only when he takes upon himself the administration of the property, that these effects ensue, and, by a natural consequence, only to the amount of the property that he administers. He may take care of the person of the minor; he may educate him, give his consent to his marriage, do any thing in short relative to him, provided he does not administer the property as tutor, and in behalf of the minor. In this case Fouque has done neither. He signed the inventory, which is not an act of administration; he borrowed money, for which he gave a note and security in the common form, which is still less an administrative act, and this is all. And for this, a bona fide purchaser of his property, an industrious father of a family is to be utterly ruined by a tacit mortgage, which could not have been discovered, by the most scrupulous research. For, if Vignaud, when he made the purchase, had gone to the probate office to enquire whether Fouque had taken upon himself any charge that would have this effect, the answer would, undoubtedly, have been “no, he is named tutor for the minors Bernard, but he has never accepted, he has not been sworn, he has not given security, his nomination has not been *469 confirmed, and the administration of the property is still in the hands of Vellio, the executor, who was also named guardian of the minors.” If, not satisfied with this, he was to go to Vellio, he would certainly tell him the same thing; that Fouque had not administered the property, but that he had borrowed a sum, for which an indorsed note and mortgage had been given, as it would have been by any other borrower. This account would certainly have satisfied the most scrupulous that there was no risque, and until the ingenuity of the plaintiffs’ counsel was applied to the subject, none of the parties interested, saw in the transaction any thing but a common deed secured by special mortgage. Vellio considered it so, when he proved the debt, Fouque when he put it on the bilan, the syndics when they made the dividend, the plaintiffs when they received it.
Should these cursory reasonings fail to prove that the plaintiffs can have no relief on the merits, let us then have recourse to the exception for the rejection of Fouque’s testimony. He was offered as a witness for the defendant; but was rejected, because of a supposed interest, arising from his connection with the defendant, who married his daughter,—because the exclusion of the father to be a witness for the son ex *470 tends to the father in law. Neither of these are believed by the defendant to apply.
First, as to the interest, in order to exclude it must be direct or indirect, Civil Code, 312 ; but it must be an interest a certain not an eventual one. Direct interest is a gain that will accrue, or a loss that will be avoided, to the witness, by the immediate operation of the judgment in favor of the party who produces him : as if he is to receive part of the money recovered, or would be liable to pay the costs or part of the sum, if he lost ; an indirect interest is where the advantage or loss is more remote, as if the verdict to be obtained by his oath could be used in another suit for the witness, or the loss of the suit in which he testifies would give rise to another action against him. But whether direct or indirect, the interest, in order to exclude, must be apparent, it must not be eventual; and thus this court decided in the case of Hewes vs. Lauve, wheer the witness might receive a benefit from the judgment, yet as this was not certain, he was not excluded. Now, what is the interest of Fouque. His daughter is the wife of the defendant: if the plaintiff recovers, the community between her and her husband will be lessened. If the community is lessened, and if Mrs. Vignaud dies without children, then *471 Fouque, if he survives her, will inherit so much less from his daughter’s estate: here are certainly too many contingencies to create an interest. And we accordingly find that this species of expectancy in another’s estate, is not, by the law, considered as an interest either direct or indirect ; for, after establishing that criterion (director indirect interest) it proceeds to exclude expressly the ascending or descending heirs. Now, if they had an interest, they would have been excluded by the general provision. It is clear, therefore, that the law did not consider them so, and before the code they were always admitted in our courts, while interest alone was the rule of exclusion under the territorial law.
It remains then to be considered, whether the exclusion of the father extends to the father in law. There is nothing to shew this ; on the contrary, the exclusion being an express one, in derogation of the general rule, must be taken strictly. All persons are good witnesses who are of full age, not infamous, not interested, and who do not come within the enumerated relations to the parties. Here the witness is not within either. He is therefore a competent witness. The interest of the wife, even if that were of any consequence, is here gratuitously asserted. She may, or may not be in *472 community with her husband : that depends on contract. Or, if it should be presumable, in marriages contracted here, yet, it does not appear where she was married. All this ought to have be enproven by the plaintiffs, is necessary to support the objection. Besides, the wife has no interest in the case properly: until the dissolution of the marriage, the husband is perfectly master of it, may spend, dissipate, or throw it away, as he pleases.
The objection, arising from Fouque being the vendor was not urged by the plaintiffs on the trial; nor, is it mentioned in this court. Had the objection been raised, all doubt would have been removed by a release. But, there is no doubt Fouque is perfectly indifferent. He is insolvent, and the plaintiffs have accepted his cession. And again, if Vignaud should lose the slaves, they would be applied to the payment of his, Fouque’s debts : so he is interested in the decision against us, and this action of warranty, would be barred by his cession. At any rate, if personally responsible on such warranty, he can be so, for no more than the value of the negroes ; and the full amount of that value would, in that case, go to the discharge of his debts. So that he stands, in this view, perfectly indifferent between the parties.
*473 Seghers, in reply. It is erroneously asserted that Vellio, received a dividend from the syndics of Fouque. These syndics have not paid any dividend ; the ordinary creditors have not received any thing, and some mortgages and privileges are left unsatisfied. The syndics have paid only to privileged and mortgage creditors, the net proceeds of the sale of the objects specially affected to the respective mortgages or privileges, as far as those proceeds would go. This was not received by Vellio, but by the plaintiffs. This fact is set forth in the petition, not denied by the answer, and admitted by the defendant at the end of his argument on the merits. It was paid to J. A. Bernard, the eldest of the plaintiffs, whom, though not of full age, the syndics did not hesitate to trust with that payment.
The defendant maintains that Fouque never was tutor, though he was named in the will and had, in that capacity, assisted at the inventory. In support of this position he states that Fouque had done none of the requisites to complete his appointment ; here he makes the enumeration of all the duties required from a tutor by the code ; and because Fouque has willfully failed to comply with those duties, he was, says he, therefore, not a tutor, and therefore there can *474 be no mortgage attacked to his property as such, nor can he be liable to any of the consequences to which a tutor would be liable as such : as if Fouque, or his assignee, could be admitted to plead his own wrong. On the contrary, is he not within the principle laid down by Pothier, where he says that intruders are not entitled to greater favour than legal administrators ?
The defendant farther urged that Fouque did not take upon himself the administration of the minors’ property, because he has done only two acts in relation to them, viz. : signing the inventory and borrowing their money. He forgets that we have it from himself, both in his answer and affidavit on record, that between those two transactions, many other took place between Fouque and Vellio in relation to the money of the minors. He goes on and says that Vellio retained the property as executor and that he was authorised to retain it by the will ; that he administered it and disposed of it ; that the signing of the inventory was not an act of administration ; that Fouque never was the tutor, and if so, that Vellio was equally tutor and that Fouque had no right to call him to account,
I think I have satisfactorily established that the signing of the inventory, in the manner that Fouque has done, is an act of administration, *475 because that inventory could not have been made without the intervention of a tutor, and if legally appointed, the lien would have affected his property from the day of his appointment though during the year of the executorship he would have had no other act of administration, to perform, than that of attending the inventory. The executor, it is true, was authorised by the will to detain the property ; but by law be was bound to give it up at the expiration of one year, and it was the duty of the tutor to enforce that provision of the law ; and if he continued to administer and dispose of it, after that period, it was wrong in the tutor to suffer it, and he or his assignee can certainly not be admitted to be benefited thereby. I have likewise proved that Vellio was no tutor, having made his election, and that, therefore, Fouque alone was tutor ; and that even if Vellio had also been tutor this trust would have been suspended during his executorship, as being incompatible with it ; and therefore it is clear that Fouque had not only the right to call him to account, but that it was his bounden duty so to do.
The defendant next takes a new ground and maintains, 1st. that the special mortgage, mentioned in the deed of July 2d, 1812, must be first discussed : and, 2d, that the note, also *476 mentioned in the same deed, must be produced : for says he, at any rate, if the purchaser be obliged to pay, he ought to have the benefit of a subrogation to all the rights of the contracting party. In reply I shall first observe, that neither of those grounds have been urged in the court below, where even he would not have been admitted to urge them, as they were not pleaded, and that thus the plaintiffs could not have come prepared to meet them. I therefore maintain that it is now too late, that the court cannot listen thereto ; but even admitting (which I by no means do) that they could now be pleaded, it would be very easy to shew that they cannot avail the defendant.
In the suit against Fouque and his syndics in which we have recovered the judgment on which this action is brought, and the records of which is in evidence in this cause, we have set forth the manner in which the several slaves mortgaged were disposed of, to wit: that some were dead, and others were subject to the privilege of the vendors for the amount of the price for which they were sold to Fouque ; and that the net proceeds of the sale of the remainder were paid to us by the syndics ; these facts were not denied ; they are confirmed by the tableau of distribution filed by Fouque’s syndics, which ta *477 bleau has been introduced as evidence in this case by the defendant; for there the syndics after having sold every property surrendered by Fouque, apply the proceeds of each to the privilege or mortgage to which it was subject; and there it appears that no other proceeds were applied to this special mortgage than those which we have accounted for in our demand. And if this ground had been pleaded, it would have been easy to introduce at the trial any further or collateral evidence ta establish those facts.
It is asserted that the certificate of the recorder of mortgages mentioned in the act of the 2d July, 1812, excludes the presumption of any of the slaves being subject to other charges. We contend that this certificate proves nothing against the privilege of the vendor, in as much as the sale may have been made by private instrument, and afterwards recorded before a notary. If it appears on the face of the instrument that the price be due, the privilege lies without needing to be recorded with the register of mortgages. Civil Code, 470, art. 75, 468, art: 68.
The same observations apply to the production of the note ; for it is to be presumed that it was delivered by Vellio to the syndics of Fouque, because had they not been satisfied on *478 this subject, they would not have paid us the proceeds of the property mortgaged, to secure the payment of said note.
Besides, we shall remark, that the minors were no party to the transaction between Vellio and Fouque, when the latter received their money ; that the note never came to their possession, and therefore, they cannot be held to produce the note : when the defendant will have discharged their claim, he will of course be subrogated by the operation of the law to all their rights both against Fouque and against Vellio, and shall therefore, be entitled to claim the note if he thinks proper, in whosesoever hands it may be.
One of the grounds relied on by the defendant, and on which he much insists, is the want of recording our tacit mortgage. I have nothing to add on this subject. But, having stated that at all events, this mortgage would lie from the 2d of July, 1812, because Fouque on that day received the money, and the tacit mortgage was on the same day virtually recorded, by recording the deed, executed before Quinones, in which the capacity of tutor and curator was clearly set forth; and having stated also, that this was anterior by nine days to the recording of the sale of the slaves from Fouque to Vig *479 naud : the defendant endeavours to prove by the reason of the law, that the date of his private deed of sale, which is the 22d of June, 1811, and not that of the recording which is the 11th of July, 1812, must prevail against the plaintiffs, as they are not those third persons whom the code had in view, when its provisions on that head were enacted.
Those provisions are clear, they admit of no exception, and however ingenious the argument of the defendant’s counsel on this subject may be, we will confine ourselves to quote the statute in reply, which provides “ when a law is clear, and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.” Civil Code, 4, art. 13.
The defendant remarks, that during the whole of this controversy, we consider Fouque as incurring the responsibility of a tutor, because, he acted as such ; and he asserts that the law has no such provisions, and here he enumerates many acts which he pretends that a man may do without incurring that responsibility. He forgets that he has himself maintained that Vellio, for having done one of these acts (in 1813, after Fouque’s failure) had incurred that responsibility which he now endeavours to throw from Fouque, pretending that these ef *480 fects ensue only when one takes upon himself the administration of the property. Here the compliment of ingenuity well may be returned to the defendant’s counsel ; for in truth, his argument is a very ingenious one ; but what can it avail the defendant ? Does it go any way to disprove the fact of Fouque’s having received the money of his wards, when he styled himself their tutor ; and when in fact, he acted as such ? Again, shall he, or his assignee, be admitted to take advantage of his own wrong, in violating every duty which the law imposes on him, and designedly employing the circuitous means of a loan, in order to avoid that very responsibility from which the defendant’s counsel in vain attempts to exonerate him ? " He signed, says he, the inventory, and borrowed the money; this is all.” We do not conceive what he could have done more. For by this, he got the whole of his minors’ estate: and if a consideration of the nature of the one set forth by the defendant, could prevail on the court, we would beg leave to lay before them the situation of unhappy orphans despoiled of their whole fortune by the very man to whom their dying mother entrusted them, and against whose fraudulent contrivances they were utterly defenceless. It is to guard against such abuses, that, those benevo *481 lent laws have been enacted, which we invoke, and think it the duty of the court to enforce.
This last point is denied ; the plaintiffs could neither accept nor refuse his cession, being minors, nor did they accept: that Fouque is the vendor, I asserted at the end of my argument; the fact appears throughout the record, and need *483 not therefore be argued, to enable the court to apply it either ,to the merits or the exceptions in the cause.
The case cited of Hewes vs. Lauve does not apply. The community need not be proved, because it is presumed by law ; nor is it material where the defendant and his wife married : for, when a married couple emigrate from the country where their marriage was contracted to another, the laws of which are different, the property which they acquire, in the place where they have moved, is governed by the laws of that place. Gales vs. Davis’ heirs, 4 Martin, 649. On the first point, I will confine myself to a single observation. Marriage is prohibited between ascendants and descendants. Would it be lawful, to marry one’s mother-in law ?—If not, the principle applies to the evidence.*
 The opinion of the court, in this case, is not printed now, the the time for the application for a rehearing having been extended by consent, and not being expired when this sheet was put to press.